**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MIGUEL VAZQUEZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 23-CV-3050-MAB** |
| | ) | |
| **JASON CHUASSE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on Defendant Jason Chausse's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Docs. 33, 34). For the reasons set forth below, Defendant's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies is DENIED (Doc. 33). However, Defendant may request a *Pavey* hearing if he wishes to continue to pursue the affirmative defense of exhaustion.

## BACKGROUND

Plaintiff Miguel Vazquez brought this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while incarcerated at Menard Correctional Center (Docs. 1, 7, 11). Plaintiff alleges that Defendant Jason Chausse sexually harassed him while he was washing up in his cell on June 25, 2023 (Doc. 11 at p. 2). More specifically, Plaintiff claims Defendant placed a hotdog on his cell bars while he was naked and washing up, and told Plaintiff he wanted him to put the hotdog in his

butt (*Id.*; Doc. 7 at p. 6). Defendant then stared at Plaintiff for a few seconds before walking away (Doc. 11 at p. 2). Plaintiff threw the hotdog out of his cell and requested a Prison Rape Elimination Act ("PREA") complaint form from another correctional officer (*Id.*).

Following the incident on June 25, 2023, Plaintiff alleges that Defendant Chausse and other correctional officers at Menard spread the rumor that Plaintiff is "gay" and "a rat" (*Id.*). According to Plaintiff, Defendant and other correctional officers took these actions in retaliation for Plaintiff filing a PREA complaint (*Id.*). As a result, Plaintiff was allegedly attacked in the shower and yard by other inmates, and he now fears going to those locations (*Id.*).

Plaintiff initiated this action by filing a Motion to Intervene, which requested the Court intervene because no one had followed up on his PREA complaint or his emergency grievance (Doc. 1 at pp. 1-2). The Court denied Plaintiff's Motion to Intervene and instructed him to file a Complaint if he intended to file a lawsuit on this matter (Doc. 4). Accordingly, Plaintiff filed a formal Complaint on October 3, 2023 (Doc. 7). The Court conducted a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A and Plaintiff was allowed to proceed on the following claims:

> **Count 1**: Eighth Amendment cruel and unusual punishment claim against Chausse for sexually and verbally harassing Vazquez.
>
> **Count 2**: First Amendment retaliation claim against Chausse for accusing Vazquez of being a snitch and gay, prompting attacks from other inmates, in response to Vazquez filing a PREA complaint.

(Doc. 11 at pp. 3-5). The Court's preliminary review order also dismissed Defendants Lieutenant Hanks, Anthony Wills, Latoya Hughes, and the Illinois Department of Corrections ("IDOC") without prejudice because the Complaint failed to raise any allegations against them for which they could be held liable (*Id.* at p. 3).

In compliance with the Court's initial scheduling order, Defendant filed a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 33) and a supporting memorandum on April 29, 2024 (Doc. 34). As directed by the Court, Plaintiff then filed a response in opposition on October 10, 2024 (*see* Doc. 40).[1] Defendant did not file a reply in support.

## LEGAL STANDARD

*I. Summary Judgment Standards*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary

---

[1] Plaintiff filed two offensive, exhaustion-based summary judgment motions on February 21, 2024, and March 26, 2024 (Docs. 27, 29). However, the Court denied Plaintiff's first motion because exhaustion is an affirmative defense that only Defendant may raise, and the Court struck Plaintiff's second motion as duplicative (Doc. 40). Additionally, the Court's Order *sua sponte* extended the deadline for Plaintiff to respond to Defendant's exhaustion-based summary judgment motion to October 17, 2024 (*Id.*). Consequently, Plaintiff's response in opposition was timely filed (Doc. 41).

judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has held that disputed factual questions can and should be resolved by the judge (rather than a jury) as a preliminary matter in an evidentiary hearing known as a "*Pavey* hearing." *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). *Accord Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015); *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). But when a prisoner does not raise sufficient factual allegations to demonstrate a genuine dispute of material fact, then no evidentiary hearing is necessary. *Jackson v. Esser*, 105 F.4th 948, 957 (7th Cir. 2024) (citing *Smallwood*, 59 F.4th at 318).

*II. Exhaustion Requirements*

As provided in the Prison Litigation Reform Act, "[a] prisoner may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011) (citing 42 U.S.C. § 1997e(a)). A remedy has not been exhausted if the prisoner has failed to abide by the procedures for pursuing relief. *Id.* Thus, to properly exhaust one's administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

However, an inmate is not required to exhaust administrative remedies that are not actually available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016)

("Remedies that are genuinely unavailable or nonexistent need not be exhausted."). The Seventh Circuit has "found remedies unavailable in a number of instances in which the inmate, through no fault of his own, could not have accessed the grievance procedure." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018); *see, e.g.*, *Ramirez v. Young*, 906 F.3d 530, 537 (7th Cir. 2018) (grievance procedure was unavailable where prisoner was not notified of their existence because of his lack of English proficiency). Additionally, failure to exhaust is an affirmative defense that the defendants carry the burden of proving. *Ramirez*, 906 F.3d at 533. "To meet their burden, the defendants must show beyond dispute that remedies were available." *Id.* at 534.

*III. IDOC Grievance Procedures*

Individuals incarcerated within the IDOC are required to follow the grievance procedure outlined in the Illinois Administrative Code to exhaust their administrative remedies. *See* 20 Ill. Admin. Code § 504.800, *et seq*. (2017). To initiate the normal grievance process, an inmate must file a grievance with their institutional counselor within 60 days of the discovery of the incident. *Id.* at § 504.810(a).[2] After the counselor provides a response, an inmate may submit the grievance to a grievance officer who is to report his or her findings and recommendations to the Chief Administrative Officer (the "warden") within two months. *Id.* at 504.830(e). The warden reviews the grievance officer's findings

[2] Section 504.810(a) contains an exception to this 60 day filing requirement, stating "[g]rievances related to allegations of sexual abuse shall not be subject to any filing time limit." Accordingly, "prisoners filing a PREA grievance do not have to initiate the grievance process within the 60 days from the incident like they would for other grievances." *Harris v. Henderson*, 3:19-CV-00660-MAB, 2021 WL 690004, at *7 (S.D. Ill. Feb. 23, 2021). Nevertheless, "[a] prisoner still must exhaust PREA grievances by going through the steps outlined in the Administrative Code and must abide by the timelines in the Code once they initiate the grievance process." *Id.*

and recommendations, and then provides a written decision. *Id.* If an inmate is unsatisfied with the warden's decision, the inmate has 30 days from the date of the warden's decision to appeal to the Administrative Review Board (ARB). *Id.* at § 504.850(a). The ARB then submits a written report to the Director of the IDOC, who makes a final decision within six months, when reasonably feasible. *Id.* at § 504.850(e).

Alternatively, an inmate can request for his or her grievance to be handled on an emergency basis by submitting the grievance directly to the warden. *Id.* at § 504.840. If the warden determines the grievance should not be handled as an emergency, the inmate is notified in writing that he or she may resubmit the grievance in accordance with the standard grievance process. *Id.* at § 504.840(c). Conversely, if the warden determines the grievance is an emergency, the warden must expedite processing of the grievance and respond by indicating what action shall be or has been taken. *Id.* at § 504.840(b). Likewise, if an inmate seeks to appeal the warden's decision on a grievance that has been found to be an emergency, the ARB is also required to expedite processing of the grievance. *Id.* at § 504.850(f).

## Discussion

### I. *Plaintiff's Grievances*

Plaintiff alleges that he filed two grievance forms on June 26, 2023, following the incident with Defendant (Doc. 41 at p. 1).[3] Namely, Plaintiff alleges that one grievance

[3] Defendant has provided several other grievances written by Plaintiff (*see generally* Docs. 34-1, 34-2). However, Plaintiff has not argued that those grievances exhaust his claims against Defendant, and the Court's own review has confirmed that they involve unrelated issues and are ultimately inapplicable. Consequently, these grievances will only be discussed further when relevant to the Court's analysis.

was filed with Menard's Clinical Services while the other was mailed directly to the ARB (*Id.*).

Ultimately, one of Plaintiff's PREA grievances was received by the ARB on August 9, 2023 (Doc. 34-1 at pp. 20-21). That grievance contained Plaintiff's signature and was dated from June 26, 2023 (*Id.*). It did not, however, contain any response from Plaintiff's counselor, the grievance officer, or the warden (*Id.*). For that reason, the ARB's August 25, 2023, Return of Grievance form checked off two boxes indicating that additional information was required (Doc. 34-1 at p. 18). The ARB's response further stated that Plaintiff "needs to follow DR. 504.810 in the filing of grievances. The ARB will make internal affairs aware of the individual's allegations." (*Id.*).

On that same day, August 25, 2023, the ARB executive who prepared the Return of Grievance Form contacted Lieutenant Hanks via email to make him aware of Plaintiff's allegations (*Id.* at pp. 23-24). Lieutenant Hanks responded on August 26, 2023, stating, Plaintiff "***has already filed a grievance on this***. If I remember correctly we opened a PREA case, investigated it and found it unsubstantiated. If you need anything else from me, please let me know." (*Id.* at p. 23) (emphasis added).

Although Plaintiff's grievance was purportedly forwarded from the ARB to Internal Affairs at Menard on August 25, 2023 (see Doc. 34 at p. 2; Doc. 34-1 at p. 24), it was marked as initially received on October 2, 2023, and numbered K004-1023-0528 (Doc. 34-1 at pp. 3-5). The Warden determined the grievance constituted an emergency on October 4, 2023, and it was returned to the Grievance Officer on that same day (*Id.*). On October 16, 2023, the Grievance Officer recommended Grievance No. K004-1023-0528 be

denied (*Id.* at p. 3). The Grievance Officer provided several justifications for the recommended denial, including that the PREA allegations were forwarded to Internal Affairs and found to be unsubstantiated, and that Plaintiff is ineligible to request a transfer due to his status as a maximum-security inmate (*Id.* at pp. 3-4). The Grievance Officer also noted that Defendant Chausse was no longer employed by the IDOC and therefore, could not be interviewed (*Id.*). The Warden concurred in the Grievance Officer's recommendation on October 17, 2023 (*Id.*). Two days later, Plaintiff signed the bottom of the form and appealed the Warden's decision to the ARB (*Id.*).

The ARB received Plaintiff's appeal of Grievance No. K004-1023-0528 on October 30, 2023 (*Id.* at p. 2). The ARB subsequently denied Plaintiff's grievance on January 18, 2024, because it was appropriately addressed by facility administration, and Internal Affairs found his PREA claim unsubstantiated (*Id.*). An email chain between Grievance Officer McClure and an ARB executive was also provided by Defendant, and it claims that the correctional officers whose comments were requested either did not know of Plaintiff, did not deny his concerns, or were unavailable for comment (*Id.* at pp. 9-13).

*II.* *Analysis*

Defendant argues that his exhaustion-based summary judgment motion should be granted because Plaintiff did not exhaust his administrative remedies at the facility level prior to filing his Complaint in this action (*see generally* Doc. 34). Additionally, Defendant notes that Grievance No. K004-1023-0528 was not fully exhausted until the ARB issued its decision in January 2024, which was several months after Plaintiff filed his Complaint in this action (*Id.*). Meanwhile, Plaintiff's primary contention is that he attempted to

exhaust his administrative remedies by filing a grievance at Menard (i.e., at the facility level) on June 26, 2023, but remedies were made unavailable to him because that grievance was either lost or destroyed.

Defendant is correct that neither Plaintiff's grievance received by the ARB in August 2023 nor Grievance No. K004-1023-0528 were properly exhausted prior to Plaintiff filing his Complaint in this action. As it relates to the grievance received directly by the ARB in August 2023, both that grievance and Plaintiff's related statements demonstrate that Plaintiff impermissibly sent that grievance directly to the ARB before receiving responses at the facility level. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."). Moreover, there can be no dispute that Grievance No. K004-1023-0528 was not fully exhausted until after Plaintiff filed his Complaint in this action. This is also impermissible for purposes of exhaustion. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) (explaining that a plaintiff must completely exhaust his administrative remedies before suit and that he cannot do so "while the litigation is pending.").

However, Defendant's motion fails to adequately address Plaintiff's contention that he filed a grievance with Menard's Clinical Services on June 26, 2023, in addition to separately filing a grievance directly to the ARB (*see* Doc. 41 at p. 1). In fact, Defendant's exhibits contain some support for this contention. For example, Defendant's motion included an email chain from August 25 and 26, 2023, between an ARB executive and Lieutenant Hanks that was intended to notify Menard of Plaintiff's PREA grievance (Doc.

34-1 at pp. 23-24). In that email chain, Lieutenant Hanks specifically stated on August 26, 2023, that Plaintiff "has already filed a grievance on this." (*Id.*) Yet, Defendant now alleges that Plaintiff only filed three other grievances between May 30, 2023 and October 3, 2023, and "[a]ll three other grievances were medical issues related to low bunk permits." (Doc. 34 at p. 6).[4] While it is certainly possible Lieutenant Hanks' response was made in error, Defendant bore the burden of proving Plaintiff failed to exhaust his administrative remedies. *Banks v. Patton*, 743 Fed. Appx. 690, 695 (7th Cir. 2018). To meet that burden, Defendant ought have explained why the Court should discredit Lieutenant Hanks' statement about having already received a grievance from Plaintiff on this topic prior to receiving the grievance forwarded by the ARB on August 25, 2023.

Additionally, when viewed in a light favorable to Plaintiff, several other documents provide support for Plaintiff's claim that he submitted a grievance at the facility level in June 2023 (i.e., to Menard Clinical Services or other appropriate staff at Menard). First, there is an alleged letter from Plaintiff to Clinical Services dated August 12, 2023, wherein Plaintiff stated that he wrote a PREA grievance but never received a response (Doc. 34-1 at p. 22). Plaintiff's letter asks if that grievance was processed and then requests updates and the grievance number (*Id.*).[5] Furthermore, Plaintiff questioned

---

[4] The Court also wonders how Defendant concluded that records of only three grievances other than Grievance No. K004-1023-0528 existed during this period. As far as the Court can discern, Doc. 34-2 contains several grievances from that period including: (1) a grievance involving commissary purchases from May 30, 2023 (Doc. 34-1 at p. 15); (2) a grievance requesting to see a nurse for a low bank pass dated from June 29, 2023 (Doc. 34-2 at p. 17); (3) a grievance related to seeing a nurse for permits dated from July 27, 2023 (*Id.* at p. 11); (4) a grievance related to trust funds dated August 15, 2023 (*Id.* at p. 27); and (5) a grievance related to legal work dated August 27, 2023 (*Id.* at p. 29).

[5] An alleged response can be found at the bottom of the document, stating "No [grievance] received regarding PREA." (Doc. 34-1 at p. 22). It is unclear to the Court if Plaintiff is claiming that portion of the document was the actual handwritten response from someone in Menard's Clinical Services, or if it was

why he had not received a response to his PREA grievance in a different grievance dated November 15, 2023 (Doc. 34-2 at p. 2). Similarly, Plaintiff's Complaint attached a letter he wrote to the ARB on July 26, 2023, which was received on August 9, 2023 (Doc. 7 at p. 9). In that letter, Plaintiff claims that staff at Menard failed to log his grievance and he alleges that the camera in front of his cell will demonstrate that he placed his PREA grievance in the grievance box when it was brought to his cell on June 26, 2023 (*Id.*). Plaintiff's letter even specifies the officer's name, shift, and time he allegedly placed his grievance in the box (*Id.*). While none of these documents definitively prove that Plaintiff filed a grievance at the facility level in June 2023 that was then lost or destroyed, they all provide some support for his claim that he attempted to properly exhaust his administrative remedies but was prevented from doing so. And perhaps more importantly, Defendant has not addressed, confronted, or attempted to discredit any of this evidence, even though it is Defendant's burden to do so.

Nevertheless, Defendant has provided some evidence tending to demonstrate that Plaintiff did not properly file and exhaust a PREA grievance at the facility-level before bringing this action including: (1) an ARB inmate grievance log which does not reference any grievance filed by Plaintiff in June 2023 and notes that the grievance received by the ARB in August 2023 was missing information (Doc. 34-1 at pp. 1, 17); (2) a counseling

---

his attempt to copy down the response he received (*see Id.*). In addition, the Court notes that Plaintiff's Complaint includes a second letter to his counselor dated August 12, 2023, which inquired as to why he had not received a grievance number (Doc. 7 at p. 15). That letter also contains a handwritten 'response' which states, "I do not receive grievances until they are numbered by the Grievance Office. I do not have a grievance regarding PREA." (*Id.*). Admittedly, as with the first letter, this letter also lacks a signature from Plaintiff's counselor (*see Id.*).

summary dated July 25, 2023, which lists the last three grievances received and logged by the grievance office and does not include a PREA grievance from June 2023 (*Id.* at p. 19); and (3) ample evidence that Grievance No. K004-1023-0528 was not fully exhausted before Plaintiff filed his Complaint in this action (*see generally* Docs. 34-1, 34-2).

For these reasons, the Court concludes there is a contested issue of fact regarding a dispositive issue of whether Plaintiff filed a June 2023 PREA grievance at the facility level. Consequently, if Defendant wishes to continue pursuing the affirmative defense of exhaustion, a *Pavey* hearing will be necessary to resolve this contested issue of fact. *See infra* Discussion § III and accompanying text.

Assuming for the sake of argument that Plaintiff properly filed a grievance at the facility level on June 26, 2023, the Court will briefly touch on whether Plaintiff had a duty to continue attempting to exhaust that grievance even though he never received a response. Significantly, Seventh Circuit precedent makes clear that Plaintiff did not have a duty to continue exhausting an ignored, lost, or destroyed grievance. Inmates need only exhaust available remedies, and "a remedy can be unavailable if jail officials do not respond to the grievance." *Banks v. Patton*, 743 Fed. Appx. 690, 695 (7th Cir. 2018); *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("[A] remedy becomes "unavailable" if prison employees do not respond to a properly filed grievance[.]"); *Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008) ("And, if Walker did submit a grievance but received no ruling, he was not required to file an appeal.").

Furthermore, the Court has considered the related issues of whether the requirement for Plaintiff to exhaust his administrative remedies as to the missing June

2023 grievance returned after Plaintiff received instructions from the ARB and began exhausting Grievance No. K004-1023-0528. Here, given the specific facts, claim, and timeline in this case, the Court again answers in the negative. The Seventh Circuit dealt with a similar issue in *Banks v. Patton*, 743 Fed. Appx. 690. In that case, the plaintiff had filed numerous grievances between the months of November 2013 and April 2014, and never appealed any of his initial denials. *Id.* at 693. Specifically, the plaintiff filed two grievances related to his arm in December 2013 and two grievances on the same subject in February 2014. *Id.* at 695. The district court found these grievances did not exhaust the plaintiff's administrative remedies as it related to the medical defendants because the February 2014 grievances received responses at the facility-level and were not appealed. *Id.* However, the Seventh Circuit vacated the district court's judgment as to this point and found that the district court erred by concluding that the unanswered December 2013 grievances were not exhausted. *Id.* The Court explained, "it is the defendants who bear the burden of proving that Banks failed to exhaust. Banks filed two grievances in December and the defendants provided no evidence that they responded.… The jail officials' nonresponse should have established that Banks exhausted his administrative remedies." *Id.*

Similarly, if Plaintiff filed his June 2023 PREA Grievance at the facility level and Menard officials failed to respond through no fault of Plaintiff, this would mean Plaintiff no longer had an obligation to continue attempting to exhaust his administrative remedies as to issues identified in that grievance. *Id.* Therefore, although Plaintiff subsequently received instructions from the ARB and filed Grievance No. K004-1023-

0528, he did not have to wait to exhaust that grievance before filing suit because his earlier June 2023 PREA grievance was fully exhausted.

*III.* <u>*Defendant May Request a Pavey Hearing*</u>

"The Seventh Circuit has instructed that, when there are questions of fact regarding whether a plaintiff exhausted the available administrative remedies, the court must conduct an evidentiary hearing to resolve the issue." *Saffold v. Peterson*, 19-CV-1414-PP, 2022 WL 475977, at *12 (E.D. Wis. Feb. 16, 2022). "At *Pavey* hearings, judges may hear evidence, find facts, and determine credibility." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018).

Given the conflicting facts and evidence presented, if Defendant wishes to continue pursuing this affirmative defense, a *Pavey* hearing is necessary to determine whether Plaintiff filed a PREA grievance at the facility-level on June 26, 2023. To be clear, if Defendant fails to meet his burden by demonstrating that Plaintiff did not file any such grievance at the facility-level in or around June 2023, then the Court will find that Plaintiff exhausted his administrative remedies. Furthermore, at the hearing, the Court will expect Defendant to address: (1) why Lieutenant Hanks' August 2023 email said that an investigation was conducted and Plaintiff's grievance was denied, yet no such grievance was provided; and (2) why no documentation was provided regarding the related PREA investigation that was apparently conducted (*see, e.g.*, Doc. 34-1 at p. 3) ("Grievance was forwarded to Internal Affairs on 10/2/2023 and PREA not substantiated.").

Therefore, to the extent Defendant wishes to continue to contest whether Plaintiff filed a PREA grievance at the facility-level on or around June 26, 2023, he must file a

notice within **14 days** of this Order requesting a *Pavey* hearing. If a hearing is requested, Defendant shall identify the witnesses he intends to call to testify as well as the subject matter of each witness. If no request is made, the Court will enter a scheduling order for discovery on the merits of this case.

## CONCLUSION

Defendant's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies is DENIED (Doc. 33; *see also* Doc. 34). However, to the extent Defendant wishes to further challenge the dispositive factual issue of whether Plaintiff filed a PREA grievance at the facility level in June 2023, he must file a notice within **14 days** of this Order requesting a *Pavey* hearing. If a hearing is requested, Defendant shall identify the witnesses he intends to call to testify, as well as the subject matter of each witness. If no request is made, the Court will enter a scheduling order for discovery on the merits of this case.

**IT IS SO ORDERED.**

**DATED:** January 22, 2025

**s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**