IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MIGUEL VAZQUEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 23-CV-3050-MAB |
| | ) |
| JASON CHAUSSE, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on Defendant Jason Chausse's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Docs. 33, 34). The Court initially reviewed and denied Defendant's motion because the evidence demonstrated that a genuine issue of material fact existed, thereby precluding summary judgment in Defendant's favor (*see* Doc. 42). However, pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court provided Defendant with the option to request an evidentiary hearing if he wished to further contest the specific issue of whether Plaintiff exhausted his administrative remedies by filing a PREA grievance at the facility level on or around June 26, 2023 (*Id.* at pp. 14-15). Defendant timely made such a request (Doc. 44) and a *Pavey* hearing was held on May 20, 2025 (Doc. 60; *see also* Doc. 57). For the reasons set forth below, Defendant's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies is **DENIED** (Doc. 33).

## BACKGROUND[1]

Plaintiff Miguel Vazquez brought this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while incarcerated at Menard Correctional Center (Docs. 1, 7, 11). Namely, Plaintiff alleges that Defendant Chausse sexually harassed him while he was washing up in his cell on June 25, 2023 (Doc. 11 at p. 2).

The Court conducted a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A and Plaintiff was allowed to proceed on the following claims:

> **Count 1**: Eighth Amendment cruel and unusual punishment claim against Chausse for sexually and verbally harassing Vazquez.
>
> **Count 2**: First Amendment retaliation claim against Chausse for accusing Vazquez of being a snitch and gay, prompting attacks from other inmates, in response to Vazquez filing a PREA complaint.

(Doc. 11 at pp. 3-5). Thereafter, Defendant filed a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 33) and a supporting memorandum on April 29, 2024 (Doc. 34). Plaintiff filed a response in opposition on October 10, 2024 (*see* Doc. 40).

---

[1] This Order focuses upon the narrow issue of whether Plaintiff exhausted his administrative remedies by filing a PREA grievance at the facility level on or around June 26, 2023 (*see* Doc. 42). Accordingly, the following background section primarily recounts facts and details related to that specific issue. The Court's Order dated January 22, 2025, contains a more detailed recollection of Plaintiff's other attempts to exhaust his administrative remedies, as well as the general background of this case (Doc. 42).

I.   *Plaintiff's June 26, 2023 Facility Level Grievance*

Plaintiff alleges that he filed a PREA grievance with Menard's Clinical Services on June 26, 2023 (Doc. 41 at p. 1).[2] Specifically, Plaintiff states that he placed his facility level PREA grievance in the grievance box brought to his cell by Correctional Officer Gallagher at around 9:12 p.m. on June 26, 2023 (*see* Doc. 7 at p. 9). However, Plaintiff did not receive a grievance number or response in the days and weeks after submitting that grievance (Doc. 41 at pp. 1-2).

Consequently, Plaintiff took several other actions to draw attention to the issue he was grieving and inquire into the status of his grievance (Doc. 41 at pp. 1-2; Doc. 44 at p. 2). For instance, Plaintiff called the PREA hotline in July 2023 and spoke with Lieutenant Mark Hanks regarding his PREA allegations (Doc. 1 at p. 2; Doc. 44 at p. 2; *see also* Doc. 60). Additionally, Plaintiff wrote a letter to the IDOC PREA Coordinator on July 26, 2023, which was received by the ARB on August 9, 2023 (Doc. 7 at p. 9). In that letter, Plaintiff specified the exact time and officer to whom he purportedly submitted his facility level PREA grievance and then claimed that his PREA grievance was not being processed (*Id.*). Moreover, Plaintiff sent the ARB a cumulative counseling summary that was generated on July 25, 2023, to demonstrate that his PREA grievance was not amongst his three most recently logged grievances (Doc. 7 at p. 11). Similarly, on August 12, 2023, Plaintiff

---

[2] Plaintiff also sent a grievance directly to the ARB on or around June 26, 2023 (*see* Doc. 41 at p. 1; Doc. 42 at pp. 6-7). However, as discussed in the Court's Order dated January 22, 2025, that grievance could not have exhausted Plaintiff's administrative remedies because it was sent to the ARB before Plaintiff even attempted to obtain responses at the facility level (Doc. 42 at p. 9).

allegedly sent one message to his counselor and one message to Menard's Clinical Services, inquiring as to the status of his PREA grievance (*Id.* at pp. 14-15).[3]

On August 25, 2023, the ARB returned the copy of Plaintiff's PREA grievance that was sent directly to them because it did not contain facility level responses (*see* Doc. 42 at p. 7; Doc. 34-1 at pp. 18-21). In addition, the ARB executive who returned Plaintiff's grievance also emailed Lieutenant Hanks to alert him to Plaintiff's PREA allegations (Doc. 34-1 at pp. 23-24). Lieutenant Hanks responded by email on August 26, 2023, stating, Plaintiff "***has already filed a grievance on this***. If I remember correctly we opened a PREA case, investigated it and found it unsubstantiated. If you need anything else from me, please let me know." (*Id.* at p. 23) (emphasis added).

## II.    *The Court's Initial Exhaustion Order and the Pavey Hearing*

Defendant filed a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies on April 29, 2024 (Doc. 33; *see also* Doc. 34) and Plaintiff filed a response in opposition on October 10, 2024 (*see* Doc. 40). Initially, the Court DENIED Defendant's Motion by Order dated January 22, 2025, because the written pleadings and evidentiary record demonstrated that a genuine issue of material fact existed as to whether Plaintiff filed a PREA grievance at the facility level on or around June 26, 2023, thereby precluding summary judgment in Defendant's favor (*see* Doc. 42).

---

[3] Plaintiff attached both handwritten messages to his Complaint (Doc. 7 at pp. 14-15). However, neither message provides a clear indication as to when or if they were received (*Id.*). Moreover, although the bottom of each document contains a purported response, those responses are unsigned and undated (*see* Doc. 42 at pp. 10-11, fn. 5).

Page **4** of **14**

However, the Court's Order provided Defendant with the opportunity to request a *Pavey* hearing if he wished to further contest that issue (*Id.*). Pertinently, the Court's Order specified that, "at the hearing, the Court will expect Defendant to address: (1) why Lieutenant Hanks' August 2023 email said that an investigation was conducted and Plaintiff's grievance was denied, yet no such grievance was provided; and (2) why no documentation was provided regarding the related PREA investigation that was apparently conducted." (*Id.* at pp. 14-15).

On February 4, 2025, Defendant timely requested a *Pavey* hearing and identified three witnesses he intended to call at the hearing, including: (1) Lieutenant Mark Hanks, the Menard officer involved in Plaintiff's PREA investigation; (2) Jeffrey Mulholland, Plaintiff's counselor at Menard; and (3) Jacob Weatherford, a Menard staff member who could testify regarding policies and procedures at Menard related to PREA complaints (Doc. 44 at p. 2). Defendant's request for a *Pavey* hearing was granted (Doc. 46) and a *Pavey* hearing was held on May 20, 2025 (Doc. 60; *see also* Doc. 57).

At the *Pavey* hearing, Defendant presented the testimony of one witness, Jeffrey Olson,[4] a staff member who worked as a counselor at Menard beginning in September 2023 and as a grievance officer at Menard beginning in March 2024 (*see* Doc. 60).[5] Mr. Olson indicated that he was not familiar with Plaintiff, but he had reviewed his

---

[4] Defendant explained that Mr. Olson was testifying in lieu of his three anticipated witnesses because: (1) Lieutenant Hanks was no longer available for the hearing; (2) Mr. Olson could adequately take the place of Mr. Mulholland; and (3) Mr. Weatherford would have been duplicative of the other witnesses (*see generally* Doc. 60).

[5] Prior to holding those two positions, Mr. Olson worked at Menard as a correctional officer and then as a food supervisor (Doc. 60). In other words, Mr. Olson was neither employed as a counselor nor a grievance officer at the time of the events in question.

cumulative counseling summary (*see* Doc. 59-1). As such, the majority of Mr. Olson's testimony was spent reviewing Plaintiff's cumulative counseling summary to show that it did not contain any reference to a PREA grievance filed at the facility level in June 2023 (*see* Doc. 60). In addition, Mr. Olson identified and discussed various entries in Plaintiff's cumulative counseling summary to demonstrate how Plaintiff's other, non-PREA grievances were filed and processed during the summer of 2023 (*Id.*). Furthermore, Mr. Olson stated that PREA complaints made through the PREA hotline were investigated by Internal Affairs and their results were not necessarily shared with Plaintiff's counselor or Menard's grievance officers (*Id.*).

The Court then heard testimony from Plaintiff (*Id.*). First, Plaintiff testified to having placed his facility level PREA grievance in the grievance box at approximately 9:12 pm on June 26, 2023 (*Id.*). Plaintiff further testified that he had to ask inmates in nearby cells to pass him blank grievance forms because correctional officers were ignoring his requests for grievance forms (*Id.*). Plaintiff also stated that he wrote a grievance on June 27, 2023, to grieve the correctional officers' refusals to provide him with grievance forms (*Id.*). Plaintiff then challenged the accuracy of his cumulative counseling summary, testifying that his counselor, Mr. Mulholland, wrote "Tour. No issues" even though Plaintiff alerted him to his grievance issues at that time (*Id.*) Plaintiff explained that it was for this reason, among others, that he sent written messages to his counselor and Menard's Clinical Services on August 12, 2023 (*Id.*). Plaintiff also said that he submitted a grievance directly to the ARB on or around June 26, 2023, because he believed

his facility level grievance would not be taken seriously given the correctional officers' refusals to provide him with a grievance form on June 26, 2023 (*Id.*).

## LEGAL STANDARD

### I. *Summary Judgment Standards*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has held that disputed factual questions can and should be resolved by the judge (rather than a jury) as a preliminary matter in an evidentiary hearing known as a "*Pavey* hearing." *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). *Accord Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015); *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). "At Pavey hearings, judges may hear evidence, find facts, and determine credibility." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). *See also Smith v. Schwartz*, CIV. 10-721-GPM, 2012 WL 1600559, at *3 (S.D. Ill. May 7, 2012) ("At a *Pavey* hearing, a

judge is empowered to resolve factual disputes pertaining to exhaustion and to make credibility determinations about the witnesses."). After making factual findings, "the district court may allow the claim to proceed or dismiss it for failure to exhaust." *Wilborn*, 881 F.3d at 1004.

II.     *Exhaustion Requirements*

As provided in the Prison Litigation Reform Act, "[a] prisoner may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011) (citing 42 U.S.C. § 1997e(a)). A remedy has not been exhausted if the prisoner has failed to abide by the procedures for pursuing relief. *Id.* Thus, to properly exhaust one's administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

However, an inmate is not required to exhaust administrative remedies that are not actually available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("Remedies that are genuinely unavailable or nonexistent need not be exhausted."). The Seventh Circuit has "found remedies unavailable in a number of instances in which the inmate, through no fault of his own, could not have accessed the grievance procedure." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018); *see, e.g., Ramirez v. Young*, 906 F.3d 530, 537 (7th Cir. 2018) (grievance procedure was unavailable where prisoner was not notified of their existence because of his lack of English proficiency). Additionally, failure to exhaust is an affirmative defense that the defendants carry the burden of proving.

*Ramirez*, 906 F.3d at 533. "To meet their burden, the defendants must show beyond dispute that remedies were available." *Id.* at 534. *See also Smallwood*, 59 F.4th at 315 ("Moreover, we must bear in mind that failure to exhaust is an affirmative defense, and as such the burden of proof is on the defendants to establish that administrative remedies were not exhausted, and not on the prisoner to show that administrative remedies were unavailable.").

    III.    *IDOC Grievance Procedures*

Individuals incarcerated within the IDOC are required to follow the grievance procedure outlined in the Illinois Administrative Code to exhaust their administrative remedies. *See* 20 Ill. Admin. Code § 504.800, *et seq.* (2017). To initiate the normal grievance process, an inmate must file a grievance with their institutional counselor within 60 days of the discovery of the incident. *Id.* at § 504.810(a).[6] After the counselor provides a response, an inmate may submit the grievance to a grievance officer who is to report his or her findings and recommendations to the Chief Administrative Officer (the "warden") within two months. *Id.* at 504.830(e). The warden reviews the grievance officer's findings and recommendations, and then provides a written decision. *Id.* If an inmate is unsatisfied with the warden's decision, the inmate has 30 days from the date of the warden's decision to appeal to the Administrative Review Board (ARB). *Id.* at §

---

[6] Section 504.810(a) contains an exception to this 60 day filing requirement, stating "[g]rievances related to allegations of sexual abuse shall not be subject to any filing time limit." Accordingly, "prisoners filing a PREA grievance do not have to initiate the grievance process within the 60 days from the incident like they would for other grievances." *Harris v. Henderson*, 3:19-CV-00660-MAB, 2021 WL 690004, at *7 (S.D. Ill. Feb. 23, 2021). Nevertheless, "[a] prisoner still must exhaust PREA grievances by going through the steps outlined in the Administrative Code and must abide by the timelines in the Code once they initiate the grievance process." *Id.*

504.850(a). The ARB then submits a written report to the Director of the IDOC, who makes a final decision within six months, when reasonably feasible. *Id.* at § 504.850(e).

Alternatively, an inmate can request for his or her grievance to be handled on an emergency basis by submitting the grievance directly to the warden. *Id.* at § 504.840. If the warden determines the grievance should not be handled as an emergency, the inmate is notified in writing that he or she may resubmit the grievance in accordance with the standard grievance process. *Id.* at § 504.840(c). Conversely, if the warden determines the grievance is an emergency, the warden must expedite processing of the grievance and respond by indicating what action shall be or has been taken. *Id.* at § 504.840(b). Likewise, if an inmate seeks to appeal the warden's decision on a grievance that has been found to be an emergency, the ARB is also required to expedite processing of the grievance. *Id.* at § 504.850(f).

## Discussion

The sole issue before the Court is whether Plaintiff exhausted his administrative remedies by filing a PREA grievance at the facility level on or around June 26, 2023 (Doc. 42). Defendant avers that ARB records and Menard records, including Plaintiff's cumulative counseling summary, demonstrate that Plaintiff did not file a grievance at the facility level on June 26, 2023 (*see generally* Doc. 34). In response, Plaintiff contends that numerous documents, as well as his sworn testimony, demonstrate that he submitted a PREA grievance at the facility level on June 26, 2023 (*see generally* Doc. 41).

As the Court held in its prior Order, both Plaintiff and Defendant presented evidence to support their respective claims as to whether Plaintiff filed a PREA grievance

at the facility level on or around June 26, 2023 (*see generally* Doc. 42; *see also* Doc. 60). Accordingly, if Plaintiff's evidence and testimony are to be believed, then the prison officials' loss or refusal to process Plaintiff's facility level PREA grievance would have rendered the exhaustion process unavailable to Plaintiff (*see* Doc. 42 at p. 12). *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("[A] remedy becomes "unavailable" if prison employees do not respond to a properly filed grievance[.]"); *Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008) ("And, if Walker did submit a grievance but received no ruling, he was not required to file an appeal."). Conversely, if Defendant's evidence and testimony are to be believed, then Plaintiff did not properly exhaust any relevant grievance prior to filing this action (*see* Doc. 42 at p. 9). *See Pozo*, 286 F.3d at 1025 ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."); *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) (Explaining that a plaintiff must completely exhaust his administrative remedies before suit and that he cannot do so "while the litigation is pending.").

It was precisely for this reason that the Court held an evidentiary hearing to resolve this exhaustion-based factual dispute. *See Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) ("A swearing contest requires an evidentiary hearing to resolve[.]"). Crucially, however, when providing Defendant with the opportunity to request a *Pavey* hearing, the Court emphasized the significance of Lieutenant Hanks' email response and stated that it "expect[ed] Defendant to address: (1) why Lieutenant Hanks' August 2023 email said that an investigation was conducted and Plaintiff's grievance was denied, yet no such grievance was provided[.]" (Doc. 42 at p. 14). The Court emphasized this point

because, other than Lieutenant Hanks' email, the evidence supporting Plaintiff's version of events came from either his own testimony or documents he authored.

To be clear, Plaintiff's own testimony and evidence, without anything else, could be sufficient to support his claim if they are found to be credible. *See Par. v. Hyatte*, 3:21-CV-475 RLM-MGG, 2023 WL 5223093, at *5 (N.D. Ind. Aug. 15, 2023) ("The rule that a self-serving declaration or affidavit alone can't defeat summary judgment has been bad law for a decade in this circuit."). In that regard, Plaintiff's representations as to where and when he submitted his facility level PREA grievance appear credible, having remained consistent throughout the pendency of this action and even in the months prior to his filing this action (*see e.g.*, Doc. 7 at p. 9; Doc. 60). Yet, here the Court's analysis is made even simpler because the credibility of Plaintiff's testimony and supporting evidence need not be considered in a vacuum. Significantly, an email created by Lieutenant Hanks and proffered by Defendant (Doc. 34-1 at pp. 23) tends to corroborate Plaintiff's version of events. And tellingly, Defendant did not address or offer any actual evidence to explain Lieutenant Hanks' email even after Defendant was explicitly instructed to address this particular issue (*see* Doc. 42 at p. 14).[7] Therefore, having

---

[7] At the end of the *Pavey* hearing, the Court asked Defense Counsel about the decision not to address Lieutenant Hanks' email (*see* Doc. 60). Defense Counsel indicated that Lieutenant Hanks told counsel that he misspoke in his email, erroneously using the term "grievance" when he actually meant to reference an "investigation." (*Id.*). Counsel also offered to obtain and submit a written affidavit from Lieutenant Hanks on this point (*Id.*). However, given Defendant's burden as the movant, as well as the Court's explicit instruction to Defendant to address Lieutenant Hanks' email at the *Pavey* hearing, the Court does not believe that an affidavit submitted after the hearing would be a fair alternative to live testimony (Doc. 42 at p. 14). The purpose of a *Pavey* hearing is to allow the Court to make credibility determinations so it can resolve exhaustion-based factual disputes. *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) ("Roberts may have been lying about having filed a grievance—but alternatively the defendants may have been lying when they denied there was any record of such a grievance. A swearing contest requires an evidentiary hearing to resolve[.]").

conducted a *Pavey* hearing and considered the credibility of all relevant evidence, the Court finds that Defendant has not met his burden of proof by demonstrating that Plaintiff did not submit a facility level PREA grievance on or around June 26, 2023.

In addition, Defendant replaced the testimony of Mr. Mulholland, Plaintiff's counselor at Menard during the summer of 2023, with the testimony of Mr. Olson, a Menard officer who was neither personally familiar with Plaintiff nor working as a counselor or grievance officer at that time. Thus, Defendant did not provide any evidence to directly contradict Plaintiff's testimony that he wrote his counselor and Menard's Clinical Services on August 12, 2023, to inquire about the missing PREA grievance. Although Mr. Olson testified that no such letters were logged in Plaintiff's cumulative counseling summary, Mr. Olson could not personally testify as to what Mr. Mulholland received or discussed with Plaintiff during the summer of 2023.

For all these reasons, the Court finds Defendant has failed to meet his burden of proof by demonstrating that Plaintiff did not exhaust his administrative remedies by filing a PREA grievance at the facility level on June 26, 2023. Consequently, Defendant's

---

Allowing Defendant to bypass this requirement by submitting an affidavit would force the Court to make credibility determinations based solely upon the written documents, which directly contradicts the Seventh Circuit's mandate. *See id.* As explained in *McIntosh v. Wexford Health Sources, Inc.*, 987 F.3d 662, 666 (7th Cir. 2021):

> Hearings often offer what paper cannot. The court will hear directly from the witnesses and have the opportunity to assess the coherence of their accounts by evaluating their demeanor, conduct, clarity, conviction, body language, and the like—in a word, their credibility. In this way, the new hearing is not just process for the sake of process. Process matters precisely because it often enhances the quality of decision making. All of that is certainly so here, where so much turns on assessments of individual and comparative credibility.

Motion for Summary Judgment for the Failure to Exhaust Administrative Remedies is **DENIED** (Doc. 33).

### CONCLUSION

Defendant's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies is **DENIED** (Doc. 33; *see also* Doc. 34). This matter shall proceed on Plaintiff's Eighth Amendment and First Amendment claims against Defendant Chausse (*see* Doc. 11 at pp. 3-5). The stay on merits-based discovery (*see* Doc. 24) is **LIFTED** and the parties can proceed with discovery on the merits of Plaintiff's claims. A new scheduling order will be entered by separate order.

**IT IS SO ORDERED.**

**DATED:** June 4, 2025

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**